Good morning, Your Honor, and may it please the Court, Michael Shepard for the appellant David Conerly. I'm hoping to reserve three minutes for rebuttal. We'll see how that goes. Three central errors by the District Court require reversal. To reject Mr. Conerly's claim of ineffective assistance in connection with the so-called C.P.L.E. offer in March of 2018, the District Court conflated the question of whether counsel provided reasonable advice with the question of whether he implemented his client's reasonable requests. The government doesn't contest that counsel was required to implement his client's reasonable requests, and there is no question that he failed to do so. So counsel is obligated in deciding how to approach the case to take specific instructions from the defendant? I thought the defendant gets to make the major decisions, but the strategic implementations are left to counsel. I think the answer to that is, first of all, the text of the Supreme Court's opinion and this Court's opinion, as cited in our briefs, that counsel must implement reasonable requests. And I think it also turns on this Court's, I think it's this Court's Sturges v. Goldsmith decision that says, you must be reasonably effective under the circumstances. Right, but the government presents an offer. Here's a specific offer. The question is whether to take the offer or decline the offer, and counsel has that overall objective, and whether or not he didn't do a punch list of things the client wanted may not be ineffective if his overall handling of the issue and the advice he gave was within the range of professional assistance. Okay, so let's focus on his overall handling of the issue, because he's got a client who's telling him, I would like you to do whatever you can do to figure out what my criminal history category is with as much clarity as you can. That's a reasonable request. It impacted a reasonable person's decision. And isn't the answer he gave that it could be 3, 4, or 5? It ended up the judge at sentencing later agreed it was 3, but he actually gave him an accurate answer, but also advised him of the risk that it might be higher, and then warned him of the risk of landing as a career offender if there was a superseding indictment. That's all true, but his client was telling him, I'm really not comfortable making a decision until you can do whatever you can do, you know, don't do the impossible, do whatever you can do to find out more information, more clarity about my criminal history category. And there were very easy things that could have been done. The first thing, to pick up on what you referenced with the sentencing, the first thing was he didn't even complete his legal research about the quality of the argument he had that it should be a criminal history category 3 instead of 4. He didn't complete that until the sentencing. He kept telling him, I'm still working on that. It could have been completed. There was only one case out there on the subject. He could have done that and said, I've looked at all the case law, I've completed my research. I asked probation where they're going to come out. If he had found out, as they ultimately did, probation comes out of criminal history category 4, he could have said that. There were some very simple things. How would that have affected the decision-making in a way that, you know, undermines, indicates that his failure to do that was deficient and that it was prejudicial? How does it make a difference whether it's 3 or 4? Well, let me answer. Especially when the plea on the table is a C plea with a fixed range that will bind the  In two different ways. One, there's no question that Connerly says it mattered to him. He makes that very clear in his declaration. But second, as a practical matter, which is, I think, what the court is getting to, I think anybody who's pleading guilty is saying, okay, what's the result of my guilty plea going to be? And then, what are my chances at trial? And then, if I lose a trial, what's the result of trial going to be? And in order to appreciate what the result of trial is going to be, you want as much clarity as you can about your criminal history category because that's going to affect what the result is going to be if you lose a trial. But if he set a rule that defense attorneys are going to be ineffective if they don't give a precise calculation of the criminal history points, especially given all of the uncertainty sometimes that exists with regards to calculating that, I mean, isn't that a bad rule to establish? Or as soon as there's a mistake made by a defense attorney on those things, then, oh, ineffective and we're going to have to send this back. I think what's, I appreciate the point, but I think what Strickland tells us is that this depends, this determination depends on the facts of every case. These are very, it's not a rule-based thing. It depends on the facts of this case. And the facts of this case are counsel presents a plea offer, he recommends the plea offer, the defendant says, you know, I'm just not comfortable until you do these reasonable things that could easily be done. Could you do those for me? You say, you say, just not comfortable. But if we are looking specifically at this case, you know, to use a really extreme example, his counsel said it's going to be somewhere between here and here, worst case scenario, best case scenario. And it turned out that it was better than, because it turned out to be Category 3. So if he said, you know, you could get life in prison to one month, and if I know that and I say, you know what, I'm not going to plead even though I think I might be facing life in prison, then it turns out that it's more favorable. Why would that, why would he have chose to plea when he thought he might be facing this more extreme sentence if he had known that he actually was facing a less extreme? I'm trying to figure out what, if we actually do look at the specifics of this case, why that doesn't hurt you. Yeah. I think, I think the way you have to look at it or the way I ask you to look at it is what would have helped him make a decision, not which decision he was ultimately going to make. So, and I think you're doing a good job of arguing that, but you're basically saying just more information, it's another way of saying what I think you're saying, more information is always helpful. You can make a decision. But if you actually look at this, but that's some tension with that, if you look at the specifics of what he would have had for information, and if he had known that what was on the table was something, was actually more favorable, why, why would any rational person plead thinking that they, that they could go to trial and get something better, or? A, because he would have gotten the answers he requested, but B, because the answers, in fact, were going to be mixed. That is, probation was going to say criminal history category four. There wasn't any way to have the judge decide what the sentence was going to be in March when he was deciding on his plea offer. So the question is, what information? In a way, yes, there was, because it was, it was a fixed range. It was, what, 57 to 87? So he has a guarantee you're going to be, if the judge accepts this plea, you will be within that range. I think what Judge Van Dyke is getting at is, you know, if there's an ambiguity as to whether he's in four versus three, and in fact he really was in three, normally you, the incentive to go to trial is to avoid the harsher sentence. But you seem to be saying that the screw-up was that he didn't let me know the sentence was going to be more lenient, but that would make you more likely to turn down the deal, which is what he did. So that's why it's hard to see that there's prejudice here. In some ways, but the question is, the screw-up, to use the court's phrase, the screw-up is not answering his question, not doing, implementing the reasonable request, because you've got the, as Sturgis says, reasonably effective under the circumstances. So what are these circumstances? The circumstances are, for whatever reason, the client is stuck, and he's making clear that he's stuck. Well, that sounds like you're kind of getting rid of the prejudice prong, because it isn't just information, but you also ask whether you think somebody was prejudiced, and we're trying to see where the prejudice is here. The prejudice is he didn't take the C plea because he was stuck, and counsel wasn't implementing his reasonable requests. Had counsel implemented his reasonable requests, he would have been unstuck. Counsel implemented his reasonable requests and said, you know what, I've figured out that you actually will be facing a lower range, a three range, then he'd have been like, well, yeah, I'm definitely going to go to trial. He did not say that at the time. That was something that he got to by the time of sentencing, and by then it was too late. And that's my point. Had he done that work when Mr. Connolly was requesting that he do that work, Mr. Connolly would have been unstuck and could have taken the C plea. He didn't get around to it until the sentencing, even though his client was asking him repeatedly to do so. Okay. We've taken over your time with a lot of questions, but I'll give you your three minutes requested for rebuttal. I appreciate that, Your Honor. Thank you. We'll hear now from Ms. Bassett. Good morning, Your Honors. May it please the Court. My name is Maureen Bassett, and I represent the United States in this matter. Attorney Dressler provided effective assistance of counsel in advising Mr. Connolly to accept the C plea. He had provided him with the approximate guideline range, the approximate criminal history category stating right before that it was very likely a criminal history category 4, and gave him sufficient information. He said it also might be 3. Correct. Right before, Your Honor, on March 10th, he told them that it was very likely a criminal history category 4, and that's at 3ER189 paragraph 18D. And the same right before we got to the pleading open, he had confirmed right before, and it was likely going to be a 4 as well. And when he said that, Your Honor, if he had gone ahead at that point, if we're going to talk about the specifics of this case, as my colleague did, if he had gone ahead at that point and done what his client asked him to do and asked for a pre-plea report, probation would have come back like it ultimately did with a criminal history category 4. And if we take that fact and look at what was happening at the time, the AUSA had provided the C plea offer without it having gone through our office through the formal process as is typical. If he had gotten back that probation was saying it's a criminal history category 4, the C plea would have been blown up. Our office wouldn't have gone ahead with a range, which the C plea did, capturing the low end of the 3. They offered a C plea without going through the normal process? That typically doesn't happen. What typical, Your Honor, is we do ask if the opposing side is interested in a plea, and when they say yes, we then put it through. And we give that language in the email, which was done here, in which it was told, here's what we're proposing. If your client is interested, we'll then put it through to the supervisors who will approve it or not. So here, if we had gotten back probation's criminal history category 4, our office wouldn't have gone ahead with a plea that bound the government to offer the low end of a... Oh, wait. So let me be clear about something. So it wasn't an offer, but it was an offer that was subject to approval by the office still? Correct. And is that the normal practice? Yes, it is, Your Honor. Oh, okay. We don't want to waste our supervisors' time approving things that haven't been accepted by this defense. So we reach out and say, are you interested in this plea? If they say yes, we put it through. So here, the particular detail, if the strategy of Mr. Dressler... Is that clear from the record that this was the offer, the C offer made in March was subject to further review and approval before it could actually be concluded? I believe it is, Your Honor, from the emails from the prosecutor to the defense attorney. And so here, the strategy of Mr. Dressler, by not proceeding with that, he had captured a plea that offered the low end of a category, criminal history Category 3, and that would have been lost if he had gone ahead and asked... The point is that the lack of clarity for everybody at this point was actually benefiting him because he was giving... Correct. If we'd have nailed that down, you'd have given him a... What about the... That's correct. And from the other side, do you understand my question about this prejudice issue? I don't understand why, if suddenly he knew that he was facing a level 3, so therefore a lower end range, why that would have incentivized him to take the plea when he wasn't taking it, thinking that it might be at a broader range with a worse high end? Correct. And against a record that is replete with Mr. Connolly saying he did not want to take any of the government's pleas. After the March meetings, before the C plea expired, Mr. Connolly sat down, examined the plea and came back and said, I don't want any of the government's pleas, which he had said from the beginning. So, yeah, I think... So I take... But I take his argument to be that, yeah, but just having clarity, just having things nailed down sort of would have forced the issue for my client and caused him to make that decision. And are there any cases that talk about that? Because it seems somewhat... They do have to show prejudice, so it seems somewhat at odds with the requirement to show prejudice to say, well, yeah, maybe they've been better off, but... Maybe if we'd have nailed it down and figured out that it was a level 3, he would have seen that his risk was lower, but that clarity would have actually helped make the decision too. And we can never be clear, Your Honor, until we're before the judge. Even the judge will say that at the plea agreement. The judge isn't going to be able to know until he gets all the information back from probation, reviews that report, and then makes decisions. For example, here, no matter how much research Mr. Dressler had done on the issue of whether or not the state marijuana conviction being expunged did not count or did count for purposes of a federal criminal history category, no matter how much research was done at whatever point we look at before the March C plea had expired, it was a novel issue. There was very little case law on it. And what Mr. Dressler did was compare it to Proposition 47. And before... And is there a way to get that before the judge, to get a decision on that from the judge before... It'd be inappropriate for the judge, because the judge would then be engaging in plea negotiations, which at one point on the record, Judge White says he wasn't going to go any further in discussions about whether or not the superseding indictment was coming and whether or not Mr. Connolly was going to plead guilty, because district court judges cannot engage in plea discussions. It's a violation of Rule 11. So here we have something that could not be known until probation did... After the defendant pled guilty, probation did the report and gave it to the district judge, and the district judge then made a decision. And here, one of the points that my colleague brought up was that the government conceded at sentencing that the marijuana expungement should not count. That's not accurate. It was in the sentencing memo from the United States that it should count. We were at criminal history category four, like probation, recommending a sentence of 120 months. It was only after the judge went for five transcript pages over this novel issue that the prosecutor, who was not the prosecutor in the underlying case, someone standing in, said sort of diplomatically, well, okay, we can go forward that way. It wasn't that the government conceded this before that point. In fact, the government believed that that marijuana expungement should count because that's what typically happens in case life. There's something in a state court proceeding where... Wait, but you want... The government agreed to it just because they wanted to be nice? Well, I'm not saying they agreed to it to be nice. No. The government agreed to it. The government agreed to it. That's what they said. I mean, unless they were not being honest with the court. I say, Your Honor, they were reading the tea leaves. The judge went on for five pages. Up to that point, it was in our sentencing memorandum requesting that the categorization be criminal history category four. And after the judge went on for five pages, the prosecutor in court said, well, we could proceed that way. It wasn't that we conceded ahead of time saying that this is something that's clear by case law. There was no case law, and the prosecutor pointed that out. So there was effective representation on the seat plate. Everything that a reasonable attorney could do to provide someone with what their estimated range was, whether or not certain enhancement applied, was provided. And I'd like to move to the open plea unless the court has questions for me on the seat plea. Attorney Dressler also provided effective assistance of counsel at pleading open. And I point the court to June 5th, 2018. I understand right now what my colleague is arguing is that Mr. Connerly did not know that on the day his plea was set, the government was going to be prepared to supersede, and the record does not support that, Your Honors. On June 5th, 2018, which is pointed out in Dressler's Declaration 3 ER 191 paragraph 25B, and this is 14 days before the open plea, the prosecutor stated on the record that he was prepared to seek a superseding indictment. The prosecutor then, on the day of the plea, June 19th, 2018, stated that the government had postponed the superseding indictment multiple times to allow Mr. Connerly to plead to the indictment. And also on June 14th, 2018, five days before the change of plea, Mr. Connerly signed a handwritten application stating he didn't want to get a superseding indictment and possibly more severe penalty. That's why he was pleading guilty. And that's at the supplemental excerpt of record 36. He made the same statement when the district court had meticulous questioning to make sure this was an intelligent and voluntarily plea. He stated he was pleading guilty to the same reason when the court asked him, was it because he had weighed going to trial on a more serious set of penalties and more severe penalty versus pleading open to the one count in the indictment. Mr. Connerly said yes, that's why he was pleading guilty. There was no confusion the superseding indictment was coming. He had been warned of it from December 2017 when his first attorney was representing him in a letter that was provided to him saying the government says it's going to supersede and the government does this all the time when getting ready for trial. If they aren't going to have a case resolved, we supersede and add the appropriate charges and proceed. The excerpt of record, Your Honors, for the June 19th, 2018, prosecution statement that the government had postponed the supplement, the superseding indictment multiple times is 3ER419. I see that I'm out of time, Your Honor, unless there's further questions. All right. Thank you, Counsel. Thank you. All right. We'll hear from him. Thank you for the consideration, Your Honor. I'll try to get quickly through a couple of points that were raised. First of all, it is true that it is in the record that the plea agreement had to be approved, but I do not believe it is true that it was in the record that it would have been refused because it was outside the guideline range, which is the critical question in Counsel's argument. I don't think that's in the record. Second, there were arguments and questions that assumed that had Counsel done what Mr. Connerly was requesting at the time, he would have known he was a level three. I don't think that's what the evidence reflects. The evidence reflects probation would have said four, and as Ms. Bassett has said, the government would have said four. So I think that answers the questions that the court was asking about wouldn't, if he had done his homework, wouldn't he therefore have been . . . Not really because then you're saying if somebody has ambiguity as far as from best case to worst case scenario, and if you did your homework, you've discovered, well, it looks like it's closer to worst case scenario, then I don't know whether that changes my calculus as to whether to plead, because typically you assume that somebody's pleading based on their worst exposure. So all you'd be doing is validating that, yeah, it looks like I'll get the high range. So I know it feels like a catch-22, but if you got the low range, why would you plead? But if you got the high range, we're just trying to figure out why that information would . . . At least I'm trying to figure out why that information would change a rational person's calculus. It's all a weighing process. The calculus in this case was I want as much information as I can. That would have satisfied his request to get the information he wanted. I expect that he would have then gone with his counsel's advice, which was take the C plea offer. There was quite a bit of comment by Ms. Bassett that Mr. Connerly wanted to go to trial. That has an interesting impact on the taking of the open plea, but I don't think it fairly reflects the record as of the time of the C plea, because as of the time of the C plea, as we cited extensively in our brief, there were repeated occasions when Connerly was saying he wanted more clarity on his criminal history category, and there were repeated occasions when in counsel's declaration, he is saying at great length, I was trying to explain this to him about this criminal history category, trying to explain this to him, but he never did the homework that he needed to do. As to the actual open plea, it is a disputed fact as to whether Mr. Connerly knew that on the day of the open plea, he needed to plead guilty or superseding charges would be filed. And the prejudice that resulted from that was that there is nothing in the record that suggests that they ever discussed, do I have a defense to this extra charge, which of course is necessary to effective assistance on whether to take the open plea or not. And I appreciate the extra time the Court has given me. I see I've used it up. So, thank you very much.  Thank you. I thank counsel for both sides for your helpful arguments in this case, and the case just argued will be submitted, and we will stand in recess.
judges: COLLINS, VANDYKE, MENDOZA